[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 24, 2007
THOMAS K. KAHN
CLERK

No. 06-16225
Non-Argument Calendar

_____

D. C. Docket No. 05-00358-CV-CG

ROSE CATANZARO,

Plaintiff-Appellant,

SHEILA KOBER,
EUGENE DOOLING,

Plaintiffs,

versus

JAMES K. LYONS,
individually, and in his official
capacity as Director and CEO of Alabama
Port Authority d.b.a. Alabama State
Docks,

Defendant,

ALABAMA STATE PORT AUTHORITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

**(April 24, 2007)**

Before BIRCH, BARKETT and HULL, Circuit Judges.

PER CURIAM:

Rose Catanzaro appeals the district court's order granting summary judgment to her former employer, the Alabama State Port Authority ("the Authority"), on her employment discrimination claim, filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. After review, we affirm.

## I.  BACKGROUND

On July 12, 2004, Catanzaro, who is white, was hired as a police communication officer in the Authority's police department. As a new hire, Catanzaro was in the probationary period of her employment.

On September 13, 2004, due to approaching Hurricane Ivan, James Lyons, the Chief Executive for the Authority, met with his managers and decided to implement special hurricane duty. On September 14, Herbert McCants, the Police Chief at the Authority, issued a memorandum advising all shift supervisors that, effective September 14, all days off and annual leave for the police department

2

would be cancelled and that employees would work in 12-hour shifts due to the Hurricane Ivan threat. Catanzaro was on her day off when McCant's order was issued. Catanzaro's supervisor, Edward Beverly, informed Catanzaro of the order and instructed Catanzaro to report for duty at 6:00 a.m. on September 15.

Catanzaro did not report for work on September 15 or 16. Instead, she evacuated her daughter to Montgomery. Two other probationary employees and five permanent employees failed to report for work. All the probationary employees, including Catanzaro, were terminated for unsatisfactory performance during their probationary period due to failure to report for special hurricane duty, which was considered insubordination. The permanent employees were suspended for fifteen days, and one was demoted.

Catanzaro filed this action, alleging that she was terminated because of her race. The district court granted the Authority's motion for summary judgment, finding, inter alia, that Catanzaro had failed to establish her prima facie case. Specifically, the district court concluded that Catanzaro had not presented evidence that similarly situated employees outside her protected class were treated more favorably. Catanzaro filed this appeal.

## II. DISCUSSION

### A. Prima Facie Case

When relying on circumstantial evidence to prove discrimination, under the McDonnell Douglas/Burdine framework, the plaintiff must first show an inference of discriminatory intent by carrying her initial burden to establish a prima facie case of discrimination. See McDonnell Douglas Corp v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973); Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997). A plaintiff can establish a prima facie case of discriminatory discharge by showing that: (1) she is a member of a protected class; (2) she was qualified for the position held; (3) she was discharged; and (4) she was treated less favorably than a similarly situated employee outside her protected class. See Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003). This appeal concerns only the fourth element of the prima facie case since the parties do not dispute that Catanzaro satisfied the other elements.[1]

"In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Holifield, 115 F.3d at 1562. "The most important factors in the disciplinary context . . . are the nature of the offenses committed and the nature of

_____

[1]We review de novo a district court's grant of summary judgment, viewing the record and drawing all reasonable inferences in favor of the nonmoving party. Little v. United Techs., 103 F.3d 956, 959 (11th Cir. 1997).

4

the punishments imposed." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001) (quotation marks omitted).

Here, neither of the probationary employees to which Catanzaro points are adequate comparators. Marva Wright was given sick leave by McCants to travel to Missouri to care for her ailing father on September 12, two days before the Authority implemented special hurricane duty. By the time McCants issued his order cancelling annual leave and days off, Wright was out of state and was not directed to report to work. Catanzaro, on the other hand, failed to report to work on September 15 as directed and was not out on sick leave.[2]

The other comparator, Arnold Kidd, reported to work on September 15 and worked two consecutive 12-hour shifts until he was sent home on September 16. Catanzaro argues that she presented evidence that Kidd arrived late for work on September 15 because his name was not listed in the Daily Activity Report's roll call list compiled at 5:45 a.m. However, that document also contains a list of "no shows," which does not contain Kidd's name. In contrast, Kidd's declaration

---

[2]Catanzaro presented evidence that, although she initially advised Beverly that she would report on September 15, she later advised Beverly that she needed to take her daughter to safety in Montgomery. According to Catanzaro, Beverly responded, "Okay, do what you have to do." However, it is undisputed that Beverly was not authorized to supersede McCant's order cancelling days off and annual leave and that neither Lyon nor McCants knew of Catanzaro's alleged conversation with Beverly. In contrast, Wright was on sick leave, which was unaffected by McCant's order and, thus, Wright was not under orders to report for special hurricane duty. Nor is there any evidence that Wright was even aware of the order to report for special hurricane duty.

5

states that he arrived at work at 6:00 a.m. on September 15 and worked for 24 hours until the early morning of September 16. At most, the absence of Kidd's name on the 5:45 a.m. roll call supports an inference that Kidd may have been a little tardy for work. The roll call does not indicate that Kidd failed to report for work at all, the conduct for which Catanzaro was terminated.

Because we affirm the district court's conclusions regarding Catanzaro's failure to make out a prima facie case of discriminatory discharge, we do not address her arguments regarding pretext.

**B.    Motion to Strike**

Catanzaro also challenges the district court's denial of her motion to strike portions of Lyons's declaration.[3] The challenged paragraphs in Lyons's declaration explained the operations of the Authority's seaport, its impact on the Alabama economy, and the importance of Authority police officers in restarting port operations after the hurricane, and stated that no officers failed to report after Hurricane Katrina hit the seaport.

The district court denied Catanzaro's motion to strike as moot because the challenged averments were immaterial and the district court did not consider them in making its summary judgment determination. Given that Catanzaro was not

_____

[3]We review a district court's denial of a motion to strike an affidavit for abuse of discretion. Telfair v. First Union Mortgage Corp., 216 F.3d 1333, 1337 (11th Cir. 2000).

prejudiced by the admission of the challenged averments, we cannot say that the district court abused its discretion. See Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1259 (11th Cir. 2004).

**AFFIRMED**.